IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ERIC DAVIS                                                                                                           MOVANT

v.                                                                                                    No. 3:13CR163-MPM-RP

UNITED STATES OF AMERICA                                                                      RESPONDENT

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Eric Davis to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be denied.

*Habeas Corpus* **Relief Under 28 U.S.C. § 2255**

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id.*

### Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require

the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**Facts and Procedural Posture**

On October 31, 2013, a Federal grand jury indicted Eric Davis, Defendant-Movant, on one count of conspiracy to commit mail fraud against the United States, in violation of 18 U.S.C. §§ 1341 and 1349, and two counts of converting to his own use money of the United States Department of Treasury, in violation of 18 U.S.C. § 641. Presentence Investigation Report ("PSR") at 4.

Count One charged that:

[From] August 2010 through on or about December 2011 Davis did knowingly and willfully conspire with one or more persons, both known and unknown, to commit the offense of mail fraud against the United States, that is: having devised and intended to devise any scheme and artifice to defraud, for obtaining money or property by false or fraudulent pretenses, representations or promises, and for the purpose of executing such scheme and artifice, did conspire with other persons, known and unknown, to place in any post office or authorized depository for mail matter, any matter or thing whatever to be delivered by the Postal Service, to take and receive therefrom, any such matter or thing, and to knowingly cause to be delivered by mail according to the direction thereon in any such matter, all in violation of 18 U.S.C. §§ 1341 and 1349."

*Id*.

Counts Two and Three charged that Davis knowingly and intentionally converted to his own use or the use of another, money of the United States Department of Treasury in the amounts of $1,418 and $1,448, both in violation of 18 U.S.C. § 641. PSR at 4.

The court issued an order appointing Federal Public Defender George L. Lucas as the attorney for Davis on January 13, 2014. Doc. 7. Trial was originally scheduled for March 10, 2014, then reset for June 16, 2014. Docs. 12, 19. On June 12, 2014, Mr. Davis accepted a plea agreement and pled guilty to Count One; Counts Two and Three were dismissed by the Government upon conclusion of sentencing for Count One. Docs. 21, 29.

Violation of 18 U.S.C. § 1341 has a statutory maximum term of imprisonment of twenty years. 18 USC 1341 [USSG § 2B1.1 (a) (1)]. Section 1341 has a base level offense of seven. *Id.* Additionally, if the intended fraud was more than $1,000,000 and less than $2,500,000 the offense level is increased by sixteen (16) levels. USSG § 2B1.1(b)(1)(I). Davis or his co-conspirators filed 936 fraudulent tax returns using social security numbers of several hundred inmates and other individuals which totaled $1,557,326, and Davis created a business for the specific purpose of cashing fraudulent tax refund checks. PSR at 8, ¶ 25. This operation was considered "sophisticated means" and resulted in a two-level offense level increase. USSG§ 2B1.1(b)(10)(C). Davis received a three-level reduction for acceptance of responsibility and assisting authorities in the investigation of Davis' own misconduct. PSR at 9, ¶ 31-32. As a result, Davis initially had a total offense level of twenty-two (22). PSR at 9, ¶ 33.

Davis' criminal history score was determined to be sixteen, establishing a criminal history category of VI. PSR at 18, ¶ 59. Davis received three points for an aggravated robbery in 1993. PSR at 12, ¶ 46. He received one point for DUI in November of 2000. PSR at 13, ¶ 48. He received six points for a series of aggravated robberies in 2002. PSR at 14-15. ¶ 50-53. The robberies were tried together resulting in a base of three points for the robbery on August 13, 2002. PSR at 14, ¶ 50. Davis received one more point for each of the three additional robberies in the series. Davis received three points for a January 2011, possession of cocaine and possession of paraphernalia. PSR at 15, ¶ 54. He added another point later that year, in July, again for possession of drug paraphernalia. PSR at 16, ¶ 55. Davis score was completed with another two points for unlawful possession of crack cocaine and possession of drug paraphernalia in 2012. PSR at 17, ¶ 56.

Davis' guideline sentencing range initially was eighty-four (84) to one hundred and five (105) months imprisonment. PSR at 25, ¶ 89. On December 17, 2014, after a sentencing hearing during which trial counsel successfully argued to reduce the applicable guidelines range, Davis was sentenced, for Count One, to seventy (70) months of imprisonment, with three years of supervised release, and restitution of $223,245.19 (the sum of the checks processed). Doc. 32 at 5, ¶ 32. Counts Two and Three were dismissed when judgment was entered. Doc. 32 at 5, ¶ 32. Davis filed his motion to vacate under 28 U.S.C. § 2255 on December 21, 2015. Doc. 35. The Government was ordered to respond to Davis' motion. Doc. 39.

Mr. Davis presents the following claims for relief in the instant § 2255 motion, which the court has restated for clarity:

(1) Ineffective assistance of counsel:

    a. Counsel failed to object when the government changed his indictment wording and scope, replacing names of individuals with "persons known and unknown to the grand jury."

    b. Counsel failed to object to the restitution wording of the plea agreement, which could render Davis financially liable for criminal conduct which did not apply to him.

    c. Counsel failed to object to the Presentence Investigation Report regarding:

        i. Calculation of criminal history;

        ii. Various facts in the report;

        iii. Restitution totals;

        iv. Upward departure from 18 U.S.C. § 3553(a)(2).

    d. Counsel failed to object to the reasonableness of the sentence imposed.

For the reasons set forth below, none of Mr. Davis' grounds for relief has merit, and the instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 will be denied.

**(1) Ineffective Assistance of Counsel**

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

**(a) Amendment of the Indictment**

The amendment Mr. Davis challenges was a change from named co-conspirators to "persons known and unknown to the grand jury." Doc. 21 at 34. The Fifth Circuit has, however, upheld an indictment for conspiracy which contained neither the names of co-conspirators nor general language,

such as "and others known and unknown to the grand jury." *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003). The Fifth Circuit held that the failure of the indictment to identify a co-conspirator did not render the indictment insufficient. *Id.* In other words, the defendant in *Thomas* argued that his indictment for defective because it contained no language at all regarding co-conspirators, yet the court nonetheless found the indictment to be sufficient. Davis' indictment actually includes the language, "persons known and unknown to the grand jury," more information than the indictment the Fifth Circuit found sufficient in *Thomas, supra*. Thus, the present indictment is sufficient, and this claim is without substantive merit.

**(b) Objections to the Plea Agreement**

To show prejudice during the pleading process, "a defendant must show the outcome of the plea process would have been different with competent advice." *Strickland*, 466 U.S. at 1384. Counsel must communicate plea offers before they expire and advise his client regarding the wisdom of accepting or rejecting a plea agreement. *Missouri v. Frye*, 566 U.S. 134 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012). A defendant in this instance must also show that, absent counsel's deficiencies, he would have proceeded to trial. *See United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Mr. Davis alleges that trial counsel rendered ineffective assistance when he "failed to object to the restitution wording the plea agreement [and knew] or should have known it would open the door for relevant conduct that was inapplicable, and failed at any time to explain the

meaning [of] the wordings or options." Doc. 35 at 107. Further, Mr. Davis alleges that trial counsel "let the government dismiss counts two and three of the indictment, saying that it was a good deal for the movant. Counsel [knew] or should have [known] that for this the defendant would face $1,557,326.00 in restitution without discussing these points. Counsel let [the] order [] come before [the] court without explaining the exposure to relevant conduct." Doc. 35 at 108. The court notes that the restitution ordered in the present case is $223,245.19, far less than the amount Mr. Davis feared.

Davis has not shown that the outcome of the plea process would have been different with different advice. Trial counsel communicated the government's plea offer to Davis and advised him regarding accepting the offer, as shown in the transcript of his change of plea hearing. During the colloquy, the court asked Mr. Davis, "And have you fully discussed those charges and your case in general with Mr. Lucas as your attorney?" Davis replied, "Yes, sir, we have completely discussed them." Plea Transcript at 4.

The court later asked Davis, "In Count 1, you are charged with knowingly and willfully conspiring with one or more other persons, both known and unknown to the grand jury, to commit the offense of mail fraud against the United States. Are you aware that that's what you're charged with?" Davis again replied, "Yes, sir." Plea Transcript at 6. The court asked Davis, "Do you have any questions about this charge?" Davis replied, "No sir, I don't. I fully understand the charge." Plea Transcript at 7.

Davis signed the plea agreement, which clearly notes that the offer was communicated to him. In addition, Mr. Davis heard the plea agreement read by the prosecutor in open court. Plea Transcript at 8-9. After the Plea Agreement was read into the record, the court asked Davis,

"Mr. Davis, you heard the prosecutor state his understanding of the agreement that you entered into with the Government. Did he accurately state it as you understand it to be?" Davis replied, "Yes, sir, he did." Plea Transcript at 9-10. Davis also states in his motion that Mr. Lucas said the offer was a "good deal" for the defendant. Doc. 35 at 5. Further, Davis has not contended that he would not have gone to trial in the absence of counsel's alleged deficiencies.

As to restitution, during the Change of Plea hearing the following portion of the plea agreement was read into the record and acknowledged by Davis: "The defendant understands that the Court may order restitution in accordance with the provisions of the United States Code for all offenses committed and specifically agrees that restitution is not limited to the count of conviction." Plea Transcript at 9.

In any event, a challenge regarding restitution cannot form the basis of a § 2255 claim. *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999) (citing *United States v. Segler*, 37 F.3d 1131 (5th Cir.1994)). The Fifth Circuit bases this holding on the fact that the restitution amount has no impact on a defendant's imprisonment, the sole concern of a § 2255 motion. *See e.g., Holstein v. United States*, 2015 WL 1514986 at *8 (N.D. Tex. 2015) ("Claims challenging monetary penalties, whether a fine, restitution, or amount of loss, are ordinarily not cognizable in a motion to vacate because such claims do not concern the defendant's custody.") Hence, Mr. Davis' allegations regarding the amount of restitution cannot support a valid claim under § 2255.

**(c) Objections to the Presentence Investigation Report**

Mr. Davis argues that trial counsel rendered ineffective assistance by failing to object to several portions of the PSR. Mr. Davis claims: (i) his criminal history was totaled incorrectly and the probation officer did not conduct investigation into his criminal history, (ii) trial counsel

did not challenge certain facts contained in the PSR, (iii) trial counsel did not object to restitution totals, and (iv) trial counsel failed to notify Davis of the possibility of an upward departure from 18 U.S.C. § 3553(a)(2). Doc. 35 at 108.

### i. and ii. – Criminal History Investigation, Calculation, and Contents

Mr. Davis has not stated precisely why defense counsel should have challenged the criminal history calculation or how the information was inaccurate. In addition, Mr. Davis has not provided evidence to rebut the contents of the PSR. The movant carries the burden of persuasion in a § 2255 proceeding. *United States v. Valencia*, 44 F.3d 269, 274 (5th Cir. 1995) ("The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue.") Objections alone do not constitute valid rebuttal evidence. *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998). Mr. Davis argues that the PSR overstates his criminal history points by one point. Doc. 38 at 11. He believes that his criminal history points total should have been 15, rather than 16. *Id.* Even if Mr. Davis were correct about the calculation, his criminal history category would remain at VI, which is the proper category for a defendant with 13 or more criminal history points under the 2013 United States Sentencing Guidelines. In addition, in deciding to depart upward from the guideline range, the court determined that the Guidelines relied too heavily on financial loss considerations and not enough on criminal history – particularly the lifelong string of serious offenses Mr. Davis had amassed. Doc. 34 at 10. This ground for relief is without merit.

### iii. – Calculation of Restitution

First, as discussed above, the amount of restitution must be resolved on direct appeal, not in a proceeding under 28 U.S.C. § 2255. *Hatten, supra*. Defense counsel did, however, object to the

amount of loss and convinced the court to lower that amount from over $223,00 to $70,000 – thus greatly reducing Mr. Davis' offense level and guideline sentencing range. Mr. Davis also argues that the Internal Revenue Service cannot be a "victim" under 18 U.S.C. § 3663; however, applicable law does not support that contention. *See United States v. Gibbens*, C.A.1 (Me.) 1994, 25 F.3d 28; *Ratliff v. Unites States*, C.A.6 (Ky.) 1993, 999 F.2d 1023; *United States v. Jackson*, C.A.9 (Cal.) 1992, 982 F.2d 1279. This ground for relief is also without merit.

### iv. Failure to Notify Davis of an Upward Departure from 18 U.S.C. § 3553(a)(2)

Mr. Davis alleges that defense counsel failed to notify him of the possibility of an upward departure from 18 U.S.C. § 3553(a)(2). Doc. 35. To prove prejudice due to an error counsel committed at sentencing, a defendant must show there was a reasonable probability that, but for counsel's action, he would have received a lower sentence. *United States v. Grammas*, 376 F.3d 433,439 (5th Cir. 2004). The court informed Mr. Davis at his Change of Plea hearing that the court "has the authority to depart from the guidelines and impose a sentence that is more severe or less severe than the sentence called for by the guidelines," and Davis acknowledged his understanding of the fact. Plea Transcript at 11.

Trial counsel objected at sentencing to the amount of loss used to calculate Davis' offense level. Doc. 34 at 2. As a result of that objection, his offense level was lowered from 22 to 13. Doc. 34 at 3. Thus, counsel argued for and obtained a lower guideline range for Mr. Davis based upon the lower offense level. The court, however, chose to depart upward from the guideline range of 33 to 41 months based on Mr. Davis' extensive criminal history. Doc. 34 at 10. The sentence ultimately imposed, 70 months, fell well below the statutory maximum of 240 months.

The court outlined its reasoning for the upward departure:

> And I think – though I've given great weight to the advisory guideline range, I'm going to impose a sentence outside that range because the factors for departure as found are of the kind contemplated by the Sentencing Commission.
>
> And I don't – I just think the guidelines themselves don't take into account the history and characteristics of this defendant. And they seem to base the imprisonment range more on financial considerations than historic considerations of a defendant.
>
> So, I'm going to upwardly depart based on the reliable information that's been provided to me in the report that indicates that this defendant's criminal history category substantially under-represents his – the seriousness of his criminal history and the likelihood that he will commit other crimes.

Doc. 34 at 10. Thus, the movant's ground for relief regarding an upward departure is without substantive merit.

**(d) Objection to the Reasonableness of the Sentence Imposed**

Mr. Davis objects to the reasonableness of the above-guideline 70-month sentence imposed in this case, arguing that the court failed to adequately state the rationale for deviation from the recommended range – by failing to provide a "significant explanation for doing so" under 18 U.S.C. § 3553. "A defendant's criminal history is one of the factors that a court may consider in imposing a non-Guidelines sentence." *United States v. Smith*, 440 F.3d 704, 709 (5th Cir. 2006). In addition, U.S.S.G. § 1B1.4 specifically provides that "in determining . . . whether a departure from the Guidelines is warranted, the Court may consider, without limitation, any information concerning the background, character, and conduct of the defendant unless otherwise prohibited by law."

In 2008, the Fifth Circuit upheld as reasonable an upward departure from a Guideline range of 24-30 months to a sentence of 72 months' incarceration. *United States v. Lopez-Velasquez*, 526 F.3d at 807 (citations omitted). In imposing a sentence that more than doubled the

advisory Guideline range, the trial court concluded that the defendant had no respect for the laws of the United States or its borders based on his two prior drug convictions, eleven arrests by immigration officials and seven prior deportations. On review, the Fifth Circuit held that the sentencing court did not abuse its discretion in considering the defendant's eleven prior arrests under § 3553(a). The court stated:

> It is well-established that prior criminal conduct not resulting in a conviction may be considered by the sentencing judge. It is true that prior arrests, *standing alone*, are insufficiently reliable to justify an upward departure pursuant to the Guidelines. This Court has not, however, held that prior arrests may not be factored into a non-Guidelines sentence pursuant to 3553(a).

*Lopez-Velasquez, supra*, at 807 (citations omitted).

In the present case, the court did not rely solely on prior arrests, but on convictions, as well. The court detailed many reasons for an upward deviation, (S.T. 10-13), taking note of the Mr. Davis' lengthy history of repeated serious criminal violations and arrests. (S.T. 10-13). The court likewise noted that Mr. Davis had been accused of other violent crimes. (S.T. 10-13). The court found a need to adequately deter Mr. Davis' criminal conduct and protect the public from additional crimes. (S.T. 10-13). The court's rationale for upward departure is in the record. The factors constituted proper reason to deviate from the recommended range – and were set forth in sufficient detail – both at the sentencing hearing and in the Statement of Reasons filed with the Judgment in this case. The 70-month sentence imposed by the court was reasonable, and this ground for relief is without substantive merit.

## Conclusion

In sum, none of the Movant's grounds for relief has merit, and the instant motion to vacate, set aside, or correct sentence will be denied. A final judgment consistent with this memorandum opinion

will issue today.

      **SO ORDERED**, this, the 7th day of November, 2018.

                                        **/s/ MICHAEL P. MILLS**
                                        **UNITED STATES DISTRICT JUDGE**
                                        **NORTHERN DISTRICT OF MISSISSIPPI**